## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

UNITED STATES OF AMERICA,

v.

JAMES J. SEYFRIED,

Defendant.

CASE NO.: 4:13-cr-189

## O R D E R

Like much of the world, inmates in federal prisons are understandably concerned about the health risks posed by the COVID-19 pandemic.  Given the recognized risks that the pandemic poses within detention facilities, many federal prisoners are filing motions for immediate release or to accelerate their placement on home confinement.  Defendant James J. Seyfried has filed such a motion seeking that the Court grant him "compassionate release pursuant to the CARES act and Attorney General William Barr's memorandums" or home confinement.  (Doc. 81.)  Though the Court is not unsympathetic to Seyfried's concerns, those concerns do not warrant the extraordinary relief he seeks.  Thus, for the reasons set forth below, the Court **DENIES** his Motion, (id.).

## BACKGROUND

After Seyfried pleaded guilty to being a felon in possession of a firearm, the Court sentenced him to a total term of imprisonment of 120 months on April 16, 2014.  (Doc. 57.)  Seyfried is currently serving that sentence at FPC Pensacola in Pensacola, Florida, and he has a projected release date of August 23, 2023.  (Doc. 82, p. 2.)  On May 19, 2020, Seyfried filed the instant Motion asking to be recently due to the recently enacted CARES Act and the United States Attorney General's memorandum regarding the Act.  (Doc. 81, p. 1.)  Alternatively, he asks that

he be granted release to home confinement.  (Id.)  He states that he is 61 years old and has "several underlying health factors that could have a negative and possibly bad outcome for [him] if [he] was to contract COVID-19."  (Id. at p. 3.)  He lists "hypothyroidism, cancer with open wounds, and kidney disease" as his current medical ailments.  (Id.)

The United States responded in opposition to Seyfried's Motion and argues that the Court lacks jurisdiction to consider his request as the BOP has the ultimate discretion to designate the place of a prisoner's confinement.  (Doc. 82, pp. 2–5.)  Further, the United States contends that if the Court were to construe Seyfried's Motion as a request for compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, his motion still fails as he has not exhausted his administrative remedies, he has not demonstrated a qualifying medical condition, and he has not demonstrated that the BOP cannot adequately address his specific health risks.  (Id. at pp. 13–20.)

## DISCUSSION

## I.    Defendant's Request to be Released to Home Confinement

Designation of an inmate's place of confinement, including placement in home confinement, rests within the absolute discretion of the BOP.  Pursuant to 18 U.S.C. § 3621, "[a] person who has been sentenced to a term of imprisonment . . .  shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed . . . ."  18 U.S.C. § 3621(a).  This statute gives the BOP the exclusive authority to designate the place of imprisonment of any prisoner.  Id. at § 3621(b).  The United States Supreme Court has interpreted this statute to mean that "the Attorney General, through the BOP, has the responsibility for administering [a prisoner's] sentence."  United States v. Wilson, 503 U.S. 329, 335 (1992) (citing 18 U.S.C. § 3621(a)); see also United States v. Smalley, No. 1:13-CR-010, 2015 WL 5001189, at *1 (S.D. Ga. Aug. 21,

2015) ("the 'primary authority to designate defendant's manner and place of confinement at any stage during execution of [his] prison sentence rests with the Bureau of Prisons, not with the Court'") (quoting United States v. Morales–Morales, 985 F. Supp. 229, 231 (D.P.R. 1997)); Brown v. Atkinson, No. 09–23555–Civ, 2010 WL 3659634, *4 (S.D. Fla. Jun. 11, 2010) ("A federal district court does not have the authority to order an inmate's placement in a particular facility or program.") (cited sources omitted).

Recent developments surrounding the COVID-19 pandemic have not taken decisions regarding placement in home confinement outside the purview of the BOP. Throughout his Motion, Seyfried cites to a Memorandum from the Attorney General directing the Director of the Bureau of Prisons ("BOP") to prioritize the use of "various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic." See Memorandum dated Mar. 26, 2020, *available at* https://www.justice.gov/file/1262731/download (last visited June 9, 2020). As recently explained by the Honorable Lisa Godbey Wood of this Court:

> On March 26, 2020, the Attorney General directed the Director of BOP, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement. That authority includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, see 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g). Further, Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, enacted on March 27, 2020, permits BOP, if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate." On April 3, 2020, the Attorney General issued a memorandum directing BOP to "immediately maximize appropriate transfers to home confinement of all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elkton, and at other similarly situated BOP facilities where COVID-19 is materially affecting operations."

United States v. Allen, No. CR 214-024, 2020 WL 2199626, at *1 n.1 (S.D. Ga. May 6, 2020).

"[A] request for home confinement under the CARES Act is different than a reduction-in-sentence

(RIS) request based upon compassionate release."  Id. at *1.  To effectuate the Attorney General's

March 26, 2020 and April 3, 2020 memoranda, the BOP is utilizing its authority under 18 U.S.C.

§ 3624(c)(2) and 34 U.S.C. § 60541—not the compassionate release provision of 18 U.S.C. §

3582(c).  See Allen, 2020 WL 2199626, at *1.  Neither Section 3624(c)(2) nor Section 60541 vests

the Court with any authority to order the BOP to transfer a defendant to home confinement.  Id.

(denying request for home confinement and explaining that statutes Attorney General is using to

implement CARES Act "do not authorize a federal court to order the BOP to release a prisoner").

Thus, neither the Attorney General's memoranda nor the statutes relied upon by the BOP to

effectuate the memoranda authorize the Court to order that Seyfried serve the remainder of his

sentence in home confinement.

   For all of these reasons, the Court lacks the authority to grant Seyfried's request that he be

released to home confinement.  Only the BOP can grant him that relief, and he should, therefore,

make his request to that agency and not this Court.  For this reason, the Court **DENIES**

Defendant's Motion for release to home confinement.

## II.  **Defendant's Construed Request for Compassionate Release**

   Additionally, the Court will construe Seyfried's motion as a request for compassionate

release under the First Step Act at 18 U.S.C. § 3582(c)(1)(A).  Section 3582(c)(1)(A) provides a

narrow path for a district court to reduce the sentence of a criminal defendant where there are

"extraordinary and compelling reasons" to do so.  18 U.S.C. § 3582(c)(1)(A)(i).  Prior to the

passage of the First Step Act, only the Director of the BOP could file a motion for compassionate

release in the district court.  The First Step Act modified Section 3582(c)(1)(A) to allow a

defendant to move a federal district court for compassionate release.  However, there are four prerequisites to a court's granting compassionate release under the First Step Act.  First, the defendant must have exhausted his administrative rights with the BOP.  Id. Second, the court must find that "extraordinary and compelling reasons warrant" release.  18 U.S.C. § 3582(c)(1)(A)(i). Third, the court must consider the factors set forth in 18 U.S.C. § 3553(a).  18 U.S.C. § 3582(c)(1)(A).  Fourth, the court must find that release is consistent with the Sentencing Commission's policy statements.  18 U.S.C. § 3582(c)(1)(A).

**A.  Defendant Failed to Exhaust his Administrative Remedies.**

The United States argues that Seyfried cannot meet the first of these requirements—exhaustion of administrative remedies—because he has failed to present his request for release to the Warden or anyone within the BOP.  (Doc. 32, pp. 13–17.)  Specifically, Section 3582(c)(1)(A) prescribes that a defendant may file a motion for compassionate release only "after [he] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."  18 U.S.C. § 3582(c)(1)(A).  In his Motion, Seyfried impliedly admits that the has not fully exhausted his administrative remedies.  He states that he has submitted forms to his unit manager and warden but that "due to the extraordinary circumstances of the COVID 19 pandemic, the time constraints placed upon my utilization of the institutional relief system is exhausting my available time to seek a remedy and continues to keep me in harms way."  (Doc. 81, p. 7.)  Additionally, Seyfried has not filed a Reply disputing the Government's contention on this or any other issue.

As an initial matter, it is unclear whether the Court may excuse a defendant's failure to fulfill Section 3582(c)(1)(A)'s administrative exhaustion requirements.  The United States District

Court for the Middle District of Florida recently explained that "[c]ourts around the country have been presented with the question of whether the administrative exhaustion or time provision may be waived and have reached different conclusions." United States v. Smith, No. 8:17-CR-412-T-36AAS, 2020 WL 2512883, at *4 (M.D. Fla. May 15, 2020).   Ultimately, after reviewing precedential guidance from the United States Supreme Court and the statute itself, the court in Smith concluded that the exhaustion requirement of Section 3582(c)(1)(A) was mandatory and could not be excused. Id.  Further, as to the "unique circumstances of the COVID-19 pandemic" specifically, the court found that a majority of district courts have found that those circumstances do not warrant waiver of the exhaustion requirement. Id. (collecting cases). The court in Smith followed those courts and found that the requirement was not waivable and denied the defendant's request for compassionate release due to his failure to exhaust. Id. at *4-5; see also Allen, 2020 WL 2199626, at *2 ("There is no futility exception to § 3582(c)(1)(A)'s administrative exhaustion requirement, and the Court declines to invent one.").

Nonetheless, other courts have found that the exhaustion requirement can be waived and have allowed some defendants who have not fully pursued their requests before the BOP to bring claims for compassionate release due to the COVID-19 pandemic. See, e.g., United States v. Pomante, No. 19-20316, 2020 WL 2513095, at *4 (E.D. Mich. May 15, 2020) ("due to the unique and unforeseen threat posed by the COVID-19 pandemic to this Defendant because of his specific health conditions, the exhaustion of administrative process can be waived"); United States v. Milner, No. 5:16-CR-32-5 (LAG-CHW), 2020 WL 2744088, at *3 (M.D. Ga. Apr. 20, 2020) (waiving exhaustion requirement where Defendant had multiple sclerosis and was unable, through no fault of his own, to submit his request for release to the warden); United States v. Zukerman, No. 16 CR. 194 (AT), 2020 WL 1659880, at *1 (S.D.N.Y. Apr. 3, 2020) (in light of defendant's

age and pre-existing conditions, "[his] exhaustion of the administrative process can be waived in light of the extraordinary threat posed—in his unique circumstances—by the COVID-19 pandemic"). However, those courts that have found that exhaustion requirements can be waived only allow waiver where: (1) pursuing administrative remedies would prejudice the defendant; (2) the administrative process would be inadequate because of some legitimate question as to whether the BOP could grant the requested relief; or (3) the BOP has been shown to have already determined the issue presented or otherwise have been biased against the defendant. See Milner, 2020 WL 2744088, at *3 (citing McCarthy v. Madigan, 503 U.S. 140, 146–48 (1992) and Shorter v. Warden, 803 F. App'x 332, 336 (11th Cir. 2020)); Sawicz, 2020 WL 1815851, at *2.

Here, the Court need not wade into the debate over whether Section 3582(c)(1)(A)'s exhaustion requirement is waivable. Even if the requirement *can be waived* Defendant has failed to establish that it *should be waived* on the specific facts of this case. He has not argued that the BOP cannot process and present his claim for compassionate release, that the agency has already made a decision that would preclude his request, or that it is biased against him. Defendant has implied that his health conditions pose such an imminent risk that he would be prejudiced by waiting for the administrative process. (Doc. 81, p. 7.) However, Defendant has only offered conclusory allegations without any evidentiary support, and he has not explained how his health conditions combined with COVID-19 pose such an imminent risk that the Court should take the extraordinary measure of circumventing the agency review that Congress mandates. Moreover, the Court is generally aware of Defendant's alleged health conditions through his pleadings on the instant Motion as well as his Presentence Investigation Report, (doc. 84)[1], and while those alleged

---

[1] It appears that the "cancer with open wounds" Defendant refers to in his Motion, (doc. 81, p. 3), may be skin cancer, as he was previously noted to have scars due to the removal of skin cancer cells, (doc. 84, p. 11).

conditions are not trivial, they do not rise to the level of age and health conditions that have compelled courts to waive Section 3582(c)(1)(A)'s exhaustion requirement.  See, e.g., Pomante, 2020 WL 2513095, at *2–4 (waiving exhaustion requirement where "Defendant is 69 years old and, most significantly, suffers from chronic kidney disease, hypertension, and diabetes"); Milner, 2020 WL 2744088, at *1–4 (waiving exhaustion requirement where defendant suffered from multiple sclerosis, was unable to receive adequate treatment, and was confined to a wheelchair); Zukerman, 2020 WL 1659880, at *1 (waiving exhaustion requirement where defendant was 75 years old and suffered from diabetes, hypertension, and obesity).  Indeed, when faced with compassionate release requests from defendants who have health risks similar to or even more severe than Defendant, courts have declined to find that COVID-19 warrants waiving the exhaustion requirement.  See United States v. Bunch, No. 19-CR-20550-BB, 2020 WL 2839174, at *1–3 (S.D. Fla. May 28, 2020) (denying motion for release based on COVID-19 concerns due, in part, to defendant's failure to exhaust administrative remedies where defendant suffers from "high blood pressure, asthma, diabetes, and other weight related ailments"); United States v. Bueno-Sierra, No. 93-CR-00567-BLOOM, 2020 WL 2526501, at *1–5 (S.D. Fla. May 17, 2020) (denying motion for release based on COVID-19  concerns due, in part, to defendant's failure to exhaust administrative remedies even though defendant is "seventy-two years old and suffers from several health conditions, including in pertinent part, diabetes and hypertension").

Congress has mandated that defendants present their Section 3582(c)(1)(A) claims for compassionate release to the BOP prior to coming to this Court.  The Court will not waive that requirement on the facts of this case.  Thus, the Court cannot grant Seyfried compassionate release until he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the

warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Seyfried concedes that he did not exhaust all administrative rights to appeal a prior to filing his Motion. Consequently, the Court **DENIES** Seyfried's request for compassionate release.

> **B. Defendant has Failed to Establish that Extraordinary and Compelling Reasons Warrant Release and that Release is Consistent with the Sentencing Commission's Policy Statements.**

Moreover, the Court may only grant Seyfried compassionate release and reduce his sentence if it finds that "extraordinary and compelling reasons" warrant such a reduction and that the reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Section 1B1.13 of the Sentencing Guidelines provides the applicable policy statement, explaining that a sentence reduction may be ordered where a court determines, upon consideration of the factors set forth in 18 U.S.C. § 3553(a), that "extraordinary and compelling reasons" exist and the defendant does not present a danger to the safety of any other person or the community. U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018). The application notes to this policy statement list three specific examples of extraordinary and compelling reasons to consider reduction of a defendant's sentence under Section 3582(c)(1)(A): (1) a medical condition; (2) advanced age; and (3) family circumstances. Id. at § 1B1.13 cmt. n.1(A)–(C). A fourth catch-all category provides: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with," the aforementioned three categories. Id. at § 1B1.13 cmt. n.1(D).

In this case, the only category into which Seyfried may possibly fall is a qualifying medical condition. Seyfried states that he suffers from "hypothyroidism, cancer with open wounds, and kidney disease" conditions which, if established, would likely place him at greater risk to be

adversely affected by COVID-19.  <u>See</u> Centers for Disease Control, *Groups At Higher Risk for Severe Illness*, <u>available at</u> <u>https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html</u> (last visited on June 9, 2020).  However, to qualify as extraordinary and compelling, an inmate's medical condition must be "serious and advanced . . . with an end of life trajectory," or must be serious enough that it "substantially diminish[es] the ability of the [inmate] to provide self-care within the environment of a correctional facility and . . . he or she is not expected to recover [from it]."  U.S. SENTENCING GUIDELINES MANUAL § 1B1.13, cmt. n.1(a)(i).  Seyfried presents no medical evidence of his alleged conditions, much less that these conditions meet either of these criteria.  Rather, he relies on generalized and hyperbolic statements.  <u>See</u> <u>Bunch</u>, 2020 WL 2839174, at *3 ("The Defendant fails to provide medical documentation, reports or even to allege the severity of his illnesses and what treatments he is or is not receiving for them.  Nor does he allege that any such ailment is terminal or that it substantially diminishes his ability to provide self-care within the correctional facility environment.").  Seyfried's argument seems to be that he will likely meet the criteria if he contracts COVID-19.  However, his generalized concern about possible exposure is at this point too speculative to qualify as extraordinary and compelling.  The Government that there are currently no confirmed cases of COVID-19 amongst inmates and staff at Defendant's facility.  (Doc. 82, p. 19.)  As the Third Circuit explained: "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."  <u>United States v. Raia</u>, 954 F.3d 594, 597 (3d Cir. 2020).  In short, without compelling medical evidence and other necessary documentation (such as an approved home release plan) from which this Court may fully evaluate Seyfried's

individual circumstances as they relate to the COVID-19 pandemic, the Court **DENIES** Seyfried's request for compassionate release on the merits as well.

### CONCLUSION

Based upon the foregoing, the Court **DENIES** Defendant David Seyfried's Motion for Relief Under the CARES Act or in the Alternative Under the Second Chance Reauthorization Act, 18 U.S.C. § 3582, (doc. 91).

**SO ORDERED**, this 16th day of June, 2020.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA